LUCILLE V. KURTIN and ESTATE OF BERNARD J. KURTIN, Deceased, LUCILLE V. KURTIN, Executrix, and JON R. KURTIN, Executor, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kurtin v. Commissioner
Docket No. 27668-85
United States Tax Court
T.C. Memo 1991-525; 1991 Tax Ct. Memo LEXIS 574; 62 T.C.M. (CCH) 1058; T.C.M. (RIA) 91525; October 22, 1991, Filed *574 An order will be issued restoring this case to the general docket for further trial. Robert T. Gilleran, for the petitioners. James W. Ruger, for the respondent. DAWSON, Judge. PAJAK, Special Trial Judge. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION This case was assigned to Special Trial Judge John J. Pajak pursuant to the provisions of section 7443A(b) and Rule 180 et seq. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The Court agrees with and adopts the Special Trial Judge's opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE Respondent determined deficiencies in, and additions to, petitioners' Federal income taxes as follows: Additions To Tax Under Sections
Year
Deficiency
6653(a)(1)
6653(a)(2)
6661
1981
$ 61,098.00
$ 3,634.60
*
1982
34,202.00
1,710.10
*
$ 3,420.20
*575 For 1981 and 1982, respondent also determined that petitioners are liable for increased interest under section 6621(c) (formerly 6621(d)). After concessions, the only issue the Court must decide is whether petitioner Lucille V. Kurtin qualifies as an innocent spouse under section 6013(e) for 1981. (The issues for 1982 were not before the Court in this case.) FINDINGS OF FACT Some of the facts have been stipulated and are so found. Lucille V. Kurtin (petitioner) and Bernard J. Kurtin filed their 1981 joint Federal income tax return with the Internal Revenue Service Center, Fresno, California. Petitioner and Mr. Kurtin resided in Van Nuys, California, when their petition was filed. After the petition was filed, Mr. Kurtin died. In 1950, petitioner married Bernard J. Kurtin and they remained married until Mr. Kurtin's death in 1988. Mr. Kurtin was a certified public accountant, and in 1953 he opened his own accounting and tax practice. Petitioner graduated from college and went into industrial engineering. She began to work in her husband's accounting practice in the early 1950s during the tax season. After the practice started to make money, petitioner was paid for her *576 services. Her duties included, but were not limited to, the processing of tax returns, the preparation of spreadsheets, and the maintenance of financial records for her husband's tax practice. During the 1970s, petitioner worked in her husband's accounting practice 12 to 14 hours a day, seven days a week. In 1981, petitioner received an allowance of about $ 2,500 a month from Mr. Kurtin. She managed all the household expenses. During 1981, petitioner and her husband placed most of their investment assets into a family trust. Specifically, the trust was funded with real estate rental property and her husband's partnership interests. The trust was structured so that the income generated by the trust would be paid to the survivor, here petitioner, for life, with the corpus to be distributed to their children upon the death of the survivor. Mr. Kurtin sold his accounting practice in 1977 in an installment sale. Petitioner continued to work at the office for one year because Mr. Kurtin and petitioner had worked together to carry on the continuity of the office. Mr. Kurtin was involved in transactions relating to Electric Auto (see discussion, infra) and Robert Aaronson. *577 Petitioner met Mr. Aaronson and had conversations with him about an electric car. She had a ride in an electric car during an event where other persons were present. Petitioner was aware that Mr. Kurtin was promoting Electric Auto transactions because Mr. Aaronson came to Mr. Kurtin's office where they set up a screen to show clients a promotional tape made from a television news program. OPINION Section 6013(d)(3) provides that, in the case of a joint return, the liability of a husband and wife shall be joint and several. However, under section 6013(e) [1] an "innocent spouse" is relieved of liability if he or she proves: (1) That a joint return has been made for a taxable year; (2) that on such return there was a substantial understatement of tax; (3) that the understatement exceeds a certain percentage of the preadjustment year income of the spouse seeking relief; (4) that the substantial understatement of tax is attributable to grossly erroneous items of the other spouse; (5) that the spouse seeking relief did not know, and had no reason to know, of such substantial understatement when he or she signed the return; and (6) that after consideration of all the facts and circumstances, *578 it would be inequitable to hold him or her liable for the deficiency in income tax attributable to such substantial understatement. ; , affd. . Petitioner bears the burden of establishing that each of the requirements of section 6013(e) has been satisfied. Purcell v. Commissioner, 826 F.2d at 473. The requirements of section 6013(e) are conjunctive. Therefore, a failure to meet any of the requirements will prevent a spouse from qualifying for relief. . *579 The parties have stipulated that petitioner and Mr. Kurtin filed a joint return for 1981, that such return contained a substantial understatement of tax, and that such understatement of tax due to Electric Auto deductions is attributable to clearly erroneous items. As a result, petitioner must prove each of the remaining requirements of section 6013(e) in order to be afforded innocent spouse protection. . Section 6013(e)(4) requires that the understatement exceed a certain percentage of petitioner's preadjustment year income. At trial, petitioner unsuccessfully attempted to introduce an unsigned copy of her 1984 return with respect to her preadjustment year. That return was not the best evidence because respondent had a copy of the original 1984 signed return filed with the Service Center which petitioner refused to stipulate to, and neither this copy nor the original 1984 signed return was placed in evidence. We observe that petitioner failed to comply with the provisions of the standing pretrial order that requires documents to be exchanged at least 15 days before trial. Rules 132(b) and 104(c)(2). Petitioner offered *580 no testimony as to what her adjusted gross income was for 1984. Because petitioner did not meet the 6013(e)(4) requirement, she is not an "innocent spouse" for 1981. Assuming, arguendo, that petitioner had satisfied section 6013(e)(4), she still must be denied innocent spouse status for 1981 for failing to meet other requirements of section 6013(e). Petitioner failed to establish that the Electric Auto deductions were attributable to Mr. Kurtin as required by Section 6013(e)(1)(B). Petitioner had access to all her deceased husband's records. She did not place in evidence any Electric Auto documents which might have shown that Electric Auto was solely Mr. Kurtin's investment. Section 6013(e)(1)(C) requires petitioner to show that she did not know, and had no reason to know, of the substantial understatement when she signed her 1981 return. Generally, the Tax Court and several courts of appeal have held that the knowledge contemplated by section 6013(e) is knowledge of the transaction itself, not necessarily knowledge of the tax consequences of a transaction. ; , *581 affd. . However, the Court of Appeals for the Ninth Circuit, to which an appeal would lie in this case, has held in a case involving grossly erroneous deductions that a spouse has "reason to know" of a substantial understatement if a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained a substantial understatement. , revg. an Oral Opinion of this Court. We are bound to follow the Ninth Circuit's opinion. , affd. . The Ninth Circuit has outlined the following factors to be considered when deciding whether the alleged innocent spouse had "reason to know" of the substantial understatement: (a) The spouse's level of education; (b) the spouse's involvement in the family's business and financial affairs; (c) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and (d) the culpable spouse's *582 evasiveness and deceit concerning the couple's finances. . In applying these factors, we note that petitioner had a college degree in industrial engineering and worked over 20 years in her husband's accounting and tax practice and by 1970 worked 12 to 14 hours a day, seven days per week. Not only was petitioner responsible for the management of the personal finances of the family household, but she was also responsible for the management of the finances of her husband's tax practice. At trial, we did not believe petitioner when she claimed that she did not know what her husband was doing. We did not find petitioner to be a credible witness. Petitioner had personal knowledge of the Electric Auto tax shelter which gave rise to the deficiency in this case, as well as her husband's efforts to promote that venture. In 1978, petitioner's counsel, Robert T. Gilleran, began to promote transactions relating to the Electric Auto Corporation of Puerto Rico (Electric Auto), a corporation formed by Robert Aaronson. In 1978, Mr. Kurtin, a certified public accountant who owned a tax preparation service, met with Mr. Gilleran. Thereafter, *583 Mr. Kurtin promoted transactions relating to Electric Auto in 1978 and 1979 and received commissions equal to 20 percent of the cash paid by each participant he persuaded to enter into a transaction. It is clear from the findings of fact in the first Jay opinion, infra, that Mr. Kurtin was a significant promoter of the Electric Auto transactions and that four percent of the 1980 and 1981 fees collected by Electric Auto were paid to Mr. Kurtin, Mr. Gilleran, and to others who promoted the transaction. , affd. without published opinion sub nom. , cert. denied 499 U.S.
(1991), . Because petitioner knew, or should have known, of the tax consequences attendant to the Electric Auto deductions, the requirements of section 6013(e)(1)(C) have not been satisfied. Finally, section 6013(e)(1)(D) provides that it must be inequitable to hold petitioner liable in light of all the facts and circumstances. In 1981, petitioner and Mr. Kurtin placed most of their investment assets into *584 a family trust. These assets included partnership interests and commercial rental property. Petitioner is the income beneficiary of the transfer of their property into the trust. (The record does not disclose whether she is entitled to any part of the corpus of the trust.) Part of these assets came from Mr. Kurtin's promotion of the Electric Auto transactions. In light of all the facts and circumstances in this case, we do not deem it inequitable to hold petitioner liable for the 1981 income tax liability. Because petitioner has not sustained her burden of proof, we hold that her claim for relief under section 6013(e) is denied. To resolve the issues for 1982, An order will be issued restoring this case to the general docket for further trial. Footnotes
*. 50 percent of the interest due on the underpayments due to negligence of $ 61,098.00 and $ 34,202.00, respectively.↩
1. Although the year before us is 1981, we apply the statute as amended in 1984. This is because sec. 424(a) of the Tax Reform Act of 1984 (division A of the Deficit Reduction Act of 1984), Pub. L. 98-369, 98 Stat. 494, 801-802, amended sec. 6013(e) retroactively to all open years to which the Internal Revenue Code applies.↩